## Ex Parte W. R. Brandau—Habeas Corpus.

The petitioner, Brandau, was imprisoned upon a charge of forgery of a draft, but as there is nothing on the face of the draft alleged to have been forged, to induce the belief that the signature thereto was not genuine, and there being no other evidence to show that the petitioner did not sign the draft with his true name, or that the draft had been altered in any respect for the purpose of fraud or deceit, the charge of forgery is not made out, and the petitioner is entitled to his discharge from custody.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*C. J. Perrinot* for petitioner.

Attorney for the defendant respectfully submits that the testimony in the above cause does not amount to evidence sufficient to sustain "probable cause" that the accused

committed the crime of forgery or other crime against the laws of Florida.

An essential element of the offense of forgery in matter of false signature, is intent to pass it as the signature of another than the one who made it.

Com. vs. Foster, 114 Mass., 311.

As a general rule, the writing falsely made must purport to be the writing of another; a mere false statement or implication of a fact not having reference to the person will not constitute crime.

Com. vs. Baldwin, 11 Gray, 197.

Counsel suggest that there is no testimony whatever in this cause tending to prove by legal evidence that the signature to the instrument alleged to have been forged is not the correct name and signature of the maker. On the contrary, the testimony tends to prove that the name signed to said instrument is the correct name of the maker, W. R. Brandau.

Counsel further suggests that there is not evidence sufficient to justify a committal of the accused for the obtaining of goods under a false pretense, for that the testimony does not prove "probable cause," or the belief that such offense was committed.

To constitute the offense of obtaining property by false pretenses, there must be an intent to defraud; an act committed; a false pretense; the fraud must be committed by the false pretense. 2 Wharton Crim. Law, 8th edition, section 1130. 2 Russ. on Crimes, 9th edition, 618.

The testimony does not tend to prove essential facts constituting the crime, unless, it may be contended, by implication, and counsel invokes the principals of law "fraud

is never to be presumed." " Fraud will never be imputed when the facts upon which the charge is predicated are, or may be, consistent with honesty and purity of intention," see Thompson on Trials, vol. 2, page 1425, sec. 1975. It is insisted for the defense that the act upon which the accusation is based is *prima facia* consistent with honesty and purity of intention.

As to the testimony, referring to the record. It is suggested that the following testimony should be eliminated therefrom :

1st. The testimony of Henry Bovis wherein he testifies to the contents of a telegram purporting to have been sent by him to Moseley Safe Co.; also contents of a telegram purporting to have been received by him from Mosely Safe Co.

2d. Telegrams marked exhibit "F," purporting to be copies of the telegraphic messages sent by Henry Bovis to Mosler Safe Co., and received by Henry Bovis from Mosler Safe Co.

3d. The testimony of J. T. Hughes.

4th. The draft or check marked exhibit " B."

5th. So much of the testimony of J. B. Cawthorne as relates to confession made by accused relating to acts not connected with the act upon which the charge against accused is predicated.

It is insisted that said testimony first mentioned, and included in first objection, as well as testimony included in objection second, should be excluded for that it does not possess the qualities of the best or primary evidence of facts pertinent to the issue, and sufficient cause not assigned whereby same should be admitted as secondary evidence ; further, as to second objection, the same relates to a party other than the accused ; that is, to one Brandon, therefore not pertinent to the issue.

It is respectfully suggested that the principals of law governing as to hearsay, primary and secondary evidence involved in above objections are so thoroughly established, it is deemed unnecessary to cite authorities.

As to objections three and four, the evidence is clearly inadmissable, as it pertains to an act having no relation or connection with the crime alleged against accused; that if it be contended that it is introduced for the purpose of showing criminal intent on the part of the accused as evidence of a similar act, the principle already invoked as to imputation of fraud, and that fraud is never to be imputed when the facts upon which the charge is predicated are, or may be, consistent with honesty and purity of intention, is deemed applicable. Thompson on Trials, vol. 2, page 1425, sec. 1975.

As to objection fifth, "A confession to be given in evidence must be of the offense charged or of some matter relating to it; you cannot give in evidence any confession or declaration of the prisoner of his having committed similar crimes upon other occasions, or of his general disposition to commit crimes. Archibald Crim. Prac. and Pleadings, vol. 1, page 409.

In conclusion, it is urged on behalf of defense, as a principle of law governing arrests and commitment:" A party may be apprehended on suspicion and detained a reasonable time for an investigation of the matter held against him, and for such purpose a hearing may be reasonably deferred from time to time, owing to the exigencies of the case, in order to procure testimony, yet when a hearing is had and examination gone into, there then must be, by legal evidence, proof sufficient to satisfy the court that there is "probable cause," or good reason, to believe from the proof that the accused is guilty of the charges alleged against him, or of

some other crime against the law; and if there be not proof of this, the accused should be discharged from custody; suspicions, however strong, unless sustained by such proof, will not justify further detention of the accused.

*The Attorney General* for the State.

MITCHELL, J.: The petition for a writ of *habeas corpus* was filed in this court March 21, 1890. The writ was issued on the same day, returnable March 24, 1890.

The petition alleges, among other things, that the petitioner, W. R. Brandau, is "confined unjustly (as he apprehends)," in the county jail of Walton county, Florida. That he is held under a commitment issued by S. P. Darby, county judge of said county, upon a charge of forgery; the petitioner denies that he is guilty of any crime as alleged. It prays a writ of *habeas corpus* and an investigation by this Court of the charge. J. A. McLeod, sheriff of said county, made return that he held the petitioner under a commitment issued by S. P. Darby, county judge of Walton county.

By consent of counsel, James A. McLean, Esq., was appointed to take the testimony in the case; and the testimony being taken and submitted to the court, is substantially as follows:

J. B. Cawthon, a witness for the State, says that he, as deputy sheriff, arrested the petitioner, and that he knew the petitioner by the name of Sobey; that he told petitioner that he was after him; that petitioner asked him what was the matter, and that witness told him that Mr. Bovis was dissatisfied about the check he had cashed for the petitioner, and that witness wanted him to go back to DeFuniak with him; that they started back, and petitioner said that he was sorry that he got into it, but as he was into it he would tell witness the whole thing; that he asked witness if he would

not take the money and let him go, and said that he was afraid to come back here for fear that Bovis had wired the house ; that he was wanted at another place; that petitioner said he knew he had done wrong ; that he knew the company would not honor his draft; that he had drawn other drafts on the company that had not been honored, and that he wanted the money of Bovis to go home on and see why his drafts were not honored.

The instrument the petitioner is charged with forging is as follows :

$25.00                                          JANUARY 28, 1890.

At sight pay to the order of Henry Bovis twenty-five dollars, value received, and charge the same to account of

W. R. BRANDAU.

To Mosler Safe Co.,
   787 Broadway,
    New York.

This evidence utterly fails to sustain the charge of forgery against the petitioner. There is nothing on the face of the instrument he is charged with forging to induce the belief that the signature thereto is not genuine. This the Attorney General, in his argument, admits. Nor is there any other evidence in the case to show that the petitioner did not sign his true name to the draft, or that the draft had been altered in any respect for the purpose of fraud or deceit, and in the absence of such showing the charge against the petitioner is not made out. 2 Bishop's Criminal Law, section 523 ; State vs. Thompson, 19 Iowa, 299 ; State vs. Kimball, 50 Maine, 409 ; Barnum vs. State, 15 Ohio, 717 ; State vs. Johnson, 26 Iowa, 407.

Our opinion being that the charge of forgery is not in the least sustained by the evidence, the prisoner should be discharged from custody under that charge, but this release

will not preclude his being prosecuted before a magistrate if the authorities shall see fit to institute the same, and held in default of bail to answer for any offence of which there may be evidence showing probable cause for his detention, whether such proceedings shall be instituted either before or subsequent to his discharge from custody on the charge of forgery.